



FILED

FEB 1 3 2020

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No.    19 CR 567 |
| | ) | |
| ROBERT SYLVESTER KELLY, | ) | Violations: Title 18, United States |
| also known as "R. Kelly," | ) | Code, Sections 371, 2251(a), |
| DERREL MCDAVID, and | ) | 2252A(a)(2), 2252A(b)(1), and 2422(b) |
| MILTON BROWN, | ) | |
| also known as "June Brown" | ) | **Superseding Indictment** |

JUDGE LEINENWEBER

MAGISTRATE JUDGE KIM

**COUNT ONE**

The SPECIAL MAY 2019 GRAND JURY charges:

In or around 1998 or 1999, at Chicago, in the Northern District of Illinois,

Eastern Division,

ROBERT SYLVESTER KELLY, also known as "R. Kelly,"

defendant herein, did knowingly employ, use, persuade, induce, entice, and coerce a

minor, namely Minor 1, to engage in sexually explicit conduct for the purpose of

producing a visual depiction of such conduct, namely, Video 1, and defendant knew

or had reason to know that such visual depiction would be transported in interstate

or foreign commerce or mailed, or such visual depiction was actually transported in

interstate or foreign commerce or mailed.

In violation of Title 18, United States Code, Section 2251(a).

1

## COUNT TWO

The SPECIAL MAY 2019 GRAND JURY further charges:

Between approximately September 26, 1998 and September 25, 1999, at Chicago, in the Northern District of Illinois, Eastern Division,

ROBERT SYLVESTER KELLY, also known as "R. Kelly,"

defendant herein, did knowingly employ, use, persuade, induce, entice, and coerce a minor, namely Minor 1, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, namely, Video 2, and defendant knew or had reason to know that such visual depiction would be transported in interstate or foreign commerce or mailed, or such visual depiction was actually transported in interstate or foreign commerce or mailed.

In violation of Title 18, United States Code, Section 2251(a).

2

**COUNT THREE**

The SPECIAL MAY 2019 GRAND JURY further charges:

Between approximately September 26, 1998 and September 25, 1999, at Chicago, in the Northern District of Illinois, Eastern Division,

ROBERT SYLVESTER KELLY, also known as "R. Kelly,"

defendant herein, did knowingly employ, use, persuade, induce, entice, and coerce a minor, namely Minor 1, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, namely, Video 3, and defendant knew or had reason to know that such visual depiction would be transported in interstate or foreign commerce or mailed, or such visual depiction was actually transported in interstate or foreign commerce or mailed.

In violation of Title 18, United States Code, Section 2251(a).

## COUNT FOUR

The SPECIAL MAY 2019 GRAND JURY further charges:

In or around 1998, at Chicago, in the Northern District of Illinois, Eastern Division,

ROBERT SYLVESTER KELLY, also known as "R. Kelly,"

defendant herein, did knowingly employ, use, persuade, induce, entice, and coerce a minor, namely Minor 1, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, namely, Video 4, and defendant knew or had reason to know that such visual depiction would be transported in interstate or foreign commerce or mailed, or such visual depiction was actually transported in interstate or foreign commerce or mailed.

In violation of Title 18, United States Code, Section 2251(a).

## COUNT FIVE

The SPECIAL MAY 2019 GRAND JURY further charges:

1.    At times material to this indictment:

a.    Defendant ROBERT SYLVESTER KELLY, also known as "R. Kelly," was a resident of Chicago, Illinois, and was a Grammy Award winning recording artist and record producer. KELLY was the president and manager of several businesses, each located in Chicago, in the Northern District of Illinois, that he maintained in furtherance of his music career, including but not limited to Bass Productions, Ltd. and RSK Enterprises, LLC (the "Kelly Businesses").

b.    From in or around June 1991 until in or around January 2014, KELLY and/or one or more of the Kelly Businesses employed defendant DERREL MCDAVID as a business manager. MCDAVID was a principal at Winkler & McDavid, Ltd, located in Oak Park, Illinois. As a manager for KELLY, MCDAVID was involved in providing services to KELLY, which services were in part intended to protect KELLY's image, reputation, and assets in the face of actual and potential criminal and civil actions involving individuals who were victims of sexual misconduct by KELLY.

c.    From at least approximately 1997 to at least approximately February 2019, MILTON BROWN, also known as "June Brown," was employed by KELLY and/or one or more of the Kelly Businesses.

5

      d.     Minor 1 met KELLY in or around 1996 or 1997 when Minor 1 was approximately 12 or 13-years old.

      e.     Minor 3 met KELLY in or around 1996 when Minor 3 was approximately 15-years old.

      f.     Minor 4 met KELLY in or around 1999 when Minor 4 was approximately 16-years old.

      g.     Minor 5 met KELLY in or around 1997 or 1998 when Minor 5 was approximately 13 or 14-years old.

      h.     Minor 6 met KELLY in or around 1997 or 1998 when Minor 6 was approximately 14 or 15-years old.

      i.     KELLY was born in 1967.

      j.     KELLY engaged in sexual contact and sexual acts, as those terms are defined in Title 18, United States Code, Section 2246, with Minor 1, Minor 3, Minor 4, Minor 5, and Minor 6 when they were each under the age of 18.

      k.     Between in or around 1998 and in or around 2002, KELLY recorded himself on video engaging in sexual contact and sexual acts with minors, including Minor 1, Minor 4, and Minor 5.

      l.     Video 1, Video 2, Video 3, and Video 4 depict KELLY engaged in sexual contact and sexual acts with Minor 1 when Minor 1 was under the age of 18.

m.      In approximately April 2000, the Illinois Department of Children and Family Services began to investigate whether KELLY was sexually abusing Minor 1.

n.      On or about June 5, 2002, a grand jury of the Circuit Court of Cook County, Illinois, returned an indictment charging KELLY in the case of *People of the State of Illinois v. Robert Kelly*, 02 CR 14952 ("Cook County case"), with twenty-one counts of child pornography, relating to Video 1 and Minor 1. The case was tried to a jury beginning on May 20, 2008, and on June 13, 2008, KELLY was acquitted of the charges.

2.      Beginning in approximately 2000 and continuing to the date of the return of this Superseding Indictment, at Chicago, in the Northern District of Illinois, and elsewhere,

ROBERT SYLVESTER KELLY, also known as "R. Kelly," and
DERREL MCDAVID,

defendants herein, did knowingly conspire with each other, Individual A, and others known and unknown to the grand jurors, to commit an offense against the United States, namely, to knowingly alter, destroy, mutilate, conceal, cover up, falsify, and make a false entry in any record, document, and tangible object, with the intent to impede, obstruct, and influence the investigation and proper administration of any matter within the jurisdiction of any department or agency of the United States, and in relation to and contemplation of such matter or case, in violation of Title 18, United States Code, Section 1519.

7

3.     It was part of the conspiracy that KELLY, MCDAVID, and others knew of KELLY's sexual contact and sexual acts with minors and knew that KELLY recorded himself engaged in sexual contact and sexual acts with minors on videotape.

4.     It was further part of the conspiracy that, in approximately 2001, KELLY and MCDAVID learned that multiple videos, including but not limited to Video 1, Video 2, Video 3, and Video 4, depicting KELLY engaged in sexual contact and sexual acts with minors were missing from KELLY's collection of such videos.

5.     It was further part of the conspiracy that, in order to conceal and cover up the existence of videos from investigators, KELLY, MCDAVID, and others agreed to collect the missing videos that depicted KELLY engaged in sexual contact and sexual acts with minors.

6.     It was further part of the conspiracy that KELLY, MCDAVID, and others agreed to pay money and caused money to be paid on KELLY's behalf to victims, witnesses, and others to ensure that they would not cooperate with law enforcement and would conceal and cover up evidence, including videos, relating to KELLY's sexual contact and sexual acts with minors, such as the following:

a.     Between approximately 2001 and approximately 2009, KELLY, MCDAVID, Individual A, and others caused Individual B to be paid hundreds of thousands of dollars for obtaining and returning multiple videos that they knew depicted KELLY engaged in sexual contact and sexual acts with a minor.

b.    In approximately early 2007, KELLY and MCDAVID agreed to pay Individual D approximately $250,000 to return a videotape that they knew depicted KELLY engaged in sexual contact and sexual acts with Minor 1 and Individual D.

c.    In approximately 2007, KELLY and MCDAVID paid Individual C and Individual D each approximately $100,000 in exchange for their efforts to return to KELLY videotapes that they knew depicted KELLY engaged in sexual contact and sexual acts with Minor 1 and Individual D.

d.    On or about April 17, 2007, KELLY and MCDAVID caused one of KELLY's businesses, Bass Productions, Ltd., to issue a check in the amount of $200,000 to BROWN, who cashed the check that same day, which KELLY, MCDAVID, and BROWN intended to use to pay Individual C and Individual D for their efforts to return to KELLY videotapes that they knew depicted KELLY engaged in sexual contact and sexual acts with Minor 1 and Individual D.

e.    As a condition of being paid money for returning videotapes that depicted KELLY engaged in sexual contact and sexual acts with minors, KELLY and MCDAVID directed Individual B, Individual C, and Individual D to take polygraph examinations regarding whether they had returned all copies of such videotapes.

f.    In approximately June 2008, after learning that Individual B planned to announce at a press conference that he had recovered videos depicting

9

KELLY engaged in sexual contact and sexual acts with minors, KELLY, MCDAVID, and others paid Individual B approximately $170,000 to cancel the press conference.

g. In approximately 2014 and 2015, KELLY paid MCDAVID to ensure that MCDAVID would continue to conceal and cover up evidence, including but not limited to Video 2, Video 3, and Video 4, relating to KELLY's sexual contact and sexual acts with minors.

7. It was further part of the conspiracy that KELLY, MCDAVID, and others agreed to intimidate, threaten, pressure, persuade, and attempt to persuade, other individuals, including but not limited to Minor 1, Minor 1's parents, Individual D, and Minor 5 to falsify and make a false entry in a record, document, and tangible object related to KELLY's sexual contact and sexual acts with minors, such as the following:

a. In approximately December 2000, pursuant to instructions that Minor 1 received from KELLY, Minor 1 falsified and caused a false entry to be made in a police report, when Minor 1 denied to law enforcement officers that KELLY engaged in a sexual relationship with Minor 1.

b. In approximately May 2002, MCDAVID instructed Minor 1's father to provide knowingly false testimony to the Cook County grand jury investigating KELLY's sexual relationship with Minor 1. MCDAVID instructed Minor 1's father to deny that Video 1 depicted Minor 1 engaged in sexual acts with KELLY, when MCDAVID knew that Video 1 did depict Minor 1 engaged in sexual

10

acts with KELLY. As instructed, Minor 1's father falsely denied to the grand jurors that Video 1 depicted KELLY and Minor 1, thus creating a false record and a false entry in a record, document, and tangible object.

      c.    In approximately May 2002, KELLY persuaded Minor 1 to provide knowingly false testimony to the Cook County grand jury investigating KELLY's sexual relationship with Minor 1. Minor 1 falsely denied to the grand jurors that KELLY engaged in a sexual relationship with Minor 1 and that Minor 1 was not depicted on Video 1, thus creating a false record and a false entry in a record, document, and tangible object.

      d.    In approximately May 2002, KELLY attempted to persuade Minor 5 to provide knowingly false testimony to the Cook County grand jury investigating KELLY's sexual relationship with Minor 1, in that KELLY instructed Minor 5 to testify falsely that she did not recognize Minor 1 on Video 1.

      e.    On or about July 26, 2007, KELLY and MCDAVID directed Individual D to falsely deny that Individual D and KELLY engaged in sexual acts together with Minor 1, when KELLY and MCDAVID knew that KELLY had engaged in sexual acts together with Minor 1 and Individual D. As KELLY and MCDAVID intended, a false record, document, and tangible object was prepared based upon Individual D's false statements.

      8.    It was further part of the conspiracy that KELLY, MCDAVID, and others agreed to intimidate, threaten, pressure, persuade, and provide benefits and

11

money to victims, victims' family members, witnesses, and others to ensure that they would destroy, conceal, cover up, falsify, and make a false entry in a record, document, and tangible object, and continue to abide by previous false statements and entries in such items, relating to KELLY's sexual contact and sexual acts with minors, such as the following:

a.     In approximately January and February 2002, KELLY and MCDAVID caused Minor 1 and Minor 1's parents to travel to foreign countries to make them unavailable to law enforcement investigating Minor 1's sexual relationship with KELLY and Video 1.

b.     From at least approximately 2000 to approximately 2015, KELLY and MCDAVID made payments to and bought gifts for Minor 1 and Minor 1's parents with the intent to persuade and induce Minor 1 and Minor 1's parents to conceal, cover up, falsify, and make a false entry in any record, document, and tangible object about KELLY's sexual relationship with Minor 1, and to continue to abide by previous false statements and entries in such items, including the existence of multiple videos depicting KELLY engaging in sexual contact and sexual acts with Minor 1.

c.     Between approximately January 2014 and approximately October 2015, KELLY caused monthly payments to be made to Minor 1 via the Kelly Businesses, many of which contained "Settlement" in the transaction line or something similar. KELLY made these payments to ensure that Minor 1 continued to abide by her prior false statements regarding KELLY's sexual relationship with

12

Minor 1 and to ensure that Minor 1 continued to conceal and cover up the existence of multiple videos depicting KELLY engaged in sexual contact and sexual acts with Minor 1.

d. In approximately 2014 and 2015, MCDAVID received payments from KELLY relating to services he provided to conceal and cover up evidence, including but not limited to Video 2, Video 3, and Video 4, and to continue to conceal and cover up such evidence of KELLY's sexual contact and sexual acts with minors, that he provided to protect KELLY's image, reputation, and assets in the face of actual and potential criminal and civil actions by individuals who were victims of sexual misconduct by KELLY, including services that MCDAVID provided to falsify and create a false entry in a record, document, and tangible object.

9. It was further part of the conspiracy that KELLY used physical abuse, violence, threats of violence, blackmail, and other controlling behaviors against victims so that KELLY could maintain control over them, prevent them from providing evidence to law enforcement, and persuade them to continue to abide by prior false statements relating to KELLY's sexual contact and sexual acts with minors and videos of such conduct.

10. It was further part of the conspiracy that KELLY, MCDAVID, Individual A and others concealed and hid, and caused to be concealed and hidden, the existence of, and acts done in furtherance of, the conspiracy.

## OVERT ACTS

11.     In furtherance of the conspiracy and to accomplish the objectives of the conspiracy, defendants committed one or more overt acts in the Northern District of Illinois, Eastern Division, and elsewhere, which overt acts included but were not limited to the following:

a.      On or about August 21, 2001, Individual A, acting as an agent for KELLY and MCDAVID, entered into a contract with Individual B to recover and return videotapes that depicted KELLY engaged in sexual contact and sexual acts with minors in exchange for $100,000 plus no more than $40,000 in expenses. The contract required Individual B to deliver the tapes to Individual A by "Thursday, August 23rd, 2001" in order to receive payment.

b.      On or about approximately April 17, 2007, and April 20, 2007, MCDAVID, on KELLY's behalf, received from Individual C and Individual D videotapes that MCDAVID and KELLY knew depicted KELLY engaged in sexual contact and sexual acts with Minor 1 and Individual D.

c.      In approximately March and April 2007, at the direction of MCDAVID on KELLY's behalf, Individual C and Individual D took polygraph examinations regarding the videotapes that Individual C and Individual D had returned depicting KELLY engaged in sexual contact and sexual acts with Minor 1 and Individual D, including whether there were additional copies of the videotapes.

14

d.    In approximately September 2008, KELLY caused a Bass Productions, Ltd. check, signed by MCDAVID, to be issued to Minor 1's father, payable in the amount of $30,000.

e.    On or about June 30, 2009, KELLY and MCDAVID caused a wire payment to be made from a Bass Productions, Ltd. bank account to pay Individual B to settle a lawsuit that Individual B had filed for payment for recovering and returning videotapes that depicted KELLY engaged in sexual contact and sexual acts with a minor.

f.    In approximately August 2013, KELLY caused Bass Productions, Ltd. to transfer title of a GMC Yukon Denali to Minor 1.

g.    In approximately September 2014, KELLY caused a wire transfer in the amount of $80,000 to be paid to MCDAVID through his firm, Winkler & McDavid. Ltd.

h.    In approximately October 2014, KELLY caused a RSK Enterprises LLC check to be issued to Minor 1, payable in the amount of $1,150, with the notation "Personal – RK" in the memo line.

i.    In approximately October 2015, KELLY caused a wire payment to be made from RSK Enterprises LLC to Minor 1, payable in the amount of $1,150, with the notation "Settlement Payment," although the payment was not made pursuant to a settlement with KELLY.

j.     In approximately December 2015, KELLY caused a wire payment in the amount of $100,000 to be made from RSK Enterprises LLC to agents of MCDAVID on MCDAVID's behalf.

All in violation of Title 18, United States Code, Section 371.

## COUNT SIX

The SPECIAL MAY 2019 GRAND JURY further charges:

1.     Paragraphs 1, 3, 4, 5, 6, 7(e), and 8 of Count Five are incorporated here.

2.     Beginning in or around August 2001 and continuing to in or around April 2007, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ROBERT SYLVESTER KELLY, also known as "R. Kelly,"
DERREL MCDAVID, and
MILTON BROWN, also known as "June Brown,"

defendants herein, did knowingly conspire with each other, Individual A, Individual B, and others known and unknown to the grand jurors, to receive child pornography, as defined in Title 18, United States Code, Section 2256(8)(A), namely, Video 2, Video 3, and Video 4, that has been mailed, and shipped and transported in interstate and foreign commerce by any means;

In violation of Title 18, United States Code, Sections 2252A(a)(2) and (b)(1).

17

## COUNT SEVEN

The SPECIAL MAY 2019 GRAND JURY further charges:

In or around August 2001, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ROBERT SYLVESTER KELLY, also known as "R. Kelly," and
DERREL MCDAVID,

defendants herein, did knowingly receive child pornography, as defined in Title 18, United States Code, Section 2256(8)(A), namely, Video 2 and Video 3, that has been mailed, and shipped and transported in interstate and foreign commerce by any means;

In violation of Title 18, United States Code, Sections 2252A(a)(2) and 2.

18

## COUNT EIGHT

The SPECIAL MAY 2019 GRAND JURY further charges:

From or about April 17, 2007, to on or about April 20, 2007, at Chicago, in the

Northern District of Illinois, Eastern Division, and elsewhere,

ROBERT SYLVESTER KELLY, also known as "R. Kelly," and
DERREL MCDAVID

defendants herein, did knowingly receive child pornography, as defined in Title 18,

United States Code, Section 2256(8)(A), namely, Video 4, that has been mailed, and

shipped and transported in interstate and foreign commerce by any means;

In violation of Title 18, United States Code, Sections 2252A(a)(2) and 2.

19

## COUNT NINE

The SPECIAL MAY 2019 GRAND JURY further charges:

Beginning from approximately 1997 and continuing to approximately September 2001, at Chicago, in the Northern District of Illinois, Eastern Division,

ROBERT SYLVESTER KELLY, also known as "R. Kelly,"

defendant herein, using the mail or any facility and means of interstate and foreign commerce, did knowingly persuade, induce, entice, and coerce any individual, namely Minor 1, who had not attained the age of 18 years, to engage in sexual activity for which any person can be charged with a criminal offense, namely, aggravated criminal sexual abuse, in violation of Title 720, Illinois Compiled Statutes, Section 5/12-16(d).

In violation of Title 18, United States Code, Section 2422(b).

## COUNT TEN

The SPECIAL MAY 2019 GRAND JURY further charges:

In or around summer 1996, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ROBERT SYLVESTER KELLY, also known as "R. Kelly,"

defendant herein, using the mail or any facility and means of interstate and foreign commerce, did knowingly persuade, induce, entice, and coerce any individual, namely Minor 3, who had not attained the age of 18 years, to engage in sexual activity for which any person can be charged with a criminal offense, namely, aggravated criminal sexual abuse, in violation of Title 720, Illinois Compiled Statutes, Section 5/12-16(d).

In violation of Title 18, United States Code, Section 2422(b).

## COUNT ELEVEN

The SPECIAL MAY 2019 GRAND JURY further charges:

Beginning from approximately 1999 and continuing to approximately August 2000, at Chicago, in the Northern District of Illinois, Eastern Division,

ROBERT SYLVESTER KELLY, also known as "R. Kelly,"

defendant herein, using the mail or any facility and means of interstate and foreign commerce, did knowingly persuade, induce, entice, and coerce any individual, namely Minor 4, who had not attained the age of 18 years, to engage in sexual activity for which any person can be charged with a criminal offense, namely, sexual exploitation of a child, in violation of Title 18, United States Code, Section 2251(a).

In violation of Title 18, United States Code, Section 2422(b).

## COUNT TWELVE

The SPECIAL MAY 2019 GRAND JURY further charges:

Beginning from approximately 1997 and continuing to approximately October 2001, at Chicago, in the Northern District of Illinois, Eastern Division,

ROBERT SYLVESTER KELLY, also known as "R. Kelly,"

defendant herein, using the mail or any facility and means of interstate and foreign commerce, did knowingly persuade, induce, entice, and coerce any individual, namely Minor 5, who had not attained the age of 18 years, to engage in sexual activity for which any person can be charged with a criminal offense, namely, aggravated criminal sexual abuse, in violation of Title 720, Illinois Compiled Statutes, Section 5/12-16(d).

In violation of Title 18, United States Code, Section 2422(b).

## COUNT THIRTEEN

The SPECIAL MAY 2019 GRAND JURY further charges:

Beginning from approximately 1997 and continuing to approximately December 2000, at Chicago, in the Northern District of Illinois, Eastern Division,

ROBERT SYLVESTER KELLY, also known as "R. Kelly,"

defendant herein, using the mail or any facility and means of interstate and foreign commerce, did knowingly persuade, induce, entice, and coerce any individual, namely Minor 6, who had not attained the age of 18 years, to engage in sexual activity for which any person can be charged with a criminal offense, namely, aggravated criminal sexual abuse, in violation of Title 720, Illinois Compiled Statutes, Section 5/12-16(d).

In violation of Title 18, United States Code, Section 2422(b).

24

**FORFEITURE ALLEGATION**

The SPECIAL MAY 2019 GRAND JURY further alleges:

1.     Upon conviction of an offense in violation of Title 18, United States Code, Sections 2251 and 2252A as set forth in this Superseding Indictment, defendants ROBERT SYLVESTER KELLY, also known as "R. Kelly," DERREL MCDAVID, and MILTON BROWN, aka "June Brown" shall forfeit to the United States of America any matter which contains visual depictions described in Title 18, United States Code, Section 2252A; any property constituting and traceable to gross profits and other proceeds obtained from such offense; and any property used and intended to be used to commit and to promote the commission of such offense, and any property traceable to such property, as provided by Title 18, United States Code, Section 2253.

2.     Upon conviction of an offense in violation of Title 18, United States Code, Section 2422 as set forth in this Superseding Indictment, defendant ROBERT SYLVESTER KELLY, also known as "R. Kelly," shall forfeit to the United States of America any property, real or personal, used or intended to be used to commit or to facilitate the commission of such offense; and any property, real or personal, that constitutes or is derived from proceeds traceable to any such offense, as provided by Title 18, United States Code, Section 2428.

3.     The property to be forfeited includes, but is not limited to

      (a)     a personal money judgment in the amount of at least approximately $1,554,748.00; and

(b)     all right, title, and interest in stock and all other ownership interests in Bass Productions, Ltd. and Winkler & McDavid, Ltd., in whatever form held by defendants.

4.     If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; the United States of America shall be entitled to forfeiture of substitute property, as provided by Title 21, United States Code Section 853(p).

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY

26