UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 19 CR 567-3 |
| v. | ) | |
| | ) | Hon. Harry D. Leinenweber |
| MILTON BROWN | ) | |
| | ) | |

## MILTON BROWN'S CONSOLIDATED MOTIONS *IN LIMINE*

Defendant, MILTON BROWN, by the Federal Defender Program and its attorney, MARY H. JUDGE, respectfully moves the Court, *in limine,* for entry of orders excluding or admitting certain evidence and argument, as set forth below.

## BACKGROUND

On February 13, 2020, the government filed a thirteen-count superseding indictment charging Robert Kelly, Derrel McDavid, and Milton Brown with a host of offenses. Count Six of that indictment charges Mr. Brown with receiving child pornography in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1). Specifically, the indictment alleges that from 2001 to 2007 Mr. Brown conspired with Kelly, McDavid, Individual A, and Individual B to receive Video 2, Video 3, and Video 4. According to Counts One through Four, those three videos depict Minor 1. Count Five alleges that Kelly employed Mr. Brown from approximately 1997 to approximately 2019. Importantly, Count Six is the only count under which Mr. Brown is charged.

1.      **This Court should permit Mr. Brown to admit evidence of his own character.**

Federal Rule of Evidence 404(a) states that an accused may introduce "evidence of a pertinent trait of his character." The word "pertinent" is read synonymous with "relevant." *United States v. Staggs*, 553 F.2d 1073, 1075 (7th Cir. 1977). Consequently, the basic question is whether the character trait in question would make any fact "of consequence to the determination" of the case more or less probable than it would be without evidence of the trait. *Id.* at 1075.

Such admissible character evidence "may be proved by testimony about [Mr. Brown's] reputation or by testimony in the form of an opinion," and, additionally, specific instances of Mr. Brown's character may be introduced if that character "is an essential element of a charge, claim, or defense." Fed. R. Evid. 405. Evidence that Mr. Brown is a law-abiding person would tend to make it less likely that he would knowingly break the law by retrieving child pornography. In *Michelson v. United States*, 335 U.S. 469, (1948), the Supreme Court stated that "possession of . . . characteristics [including 'being a law-abiding citizen'] would seem . . . incompatible with offering a bribe to a revenue agent," which was the crime charged. *Michelson* at 483; *see also*, *United States v. Jalbert*, 504 F.2d 892, 895 (1st Cir. 1974) ("character evidence is admissible . . . to show a party's general renown for honesty and lawfulness"). Ultimately, there is no indication of a general common law rule against the admissibility of evidence of law-abidingness (as distinguished from good character generally which, as noted, was usually held inadmissible). *United States v. Angelini*, 678 F.2d 380, 382 (1st Cir. 1982).

Because Milton Brown did not know the relevant materials at issue here constituted child pornography (i.e., that it (1) depicted sexually explicit conduct, and (2) that the depicted conduct involved minors), his trait of law-abidingness is relevant and admissible under Rule 404(a).

**2.    This Court should preclude the government from eliciting testimony regarding certain "other crimes, wrongs, and acts" by Mr. Brown.**

**A. This Court should bar the government from eliciting testimony from Minors 4 and 6 regarding the times Mr. Brown booked hotel rooms or otherwise made travel arrangements for them.**

The government may seek to elicit testimony by Minor 4 and Minor 6 under Federal Rule of Evidence 404(b)(2). Specifically, the government may seek to admit statements by witnesses, including Minor 4 and Minor 6, that Mr. Brown reserved hotel rooms for minors on behalf of co-defendant Robert Kelly. ████████████

██████████ Minor 4 stated:



███████████████████████ Minor 6 testified:

███████████████████████████████████

The probative value of those statements, if any, would presumably be to demonstrate "knowledge" under Rule 404(b)(2) in so far as the statements would suggest Mr. Brown knew that the individuals were minors because they could not reserve hotel rooms on their own and needed Mr. Brown to do so for them. These statements should be barred under Rules 802 and 404(b)(1).

Generally, evidence of other acts is inadmissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). There is, however, an exception to that general rule where the evidence is admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). In determining whether prior bad acts evidence would be properly admitted under Rule 404(b), courts previously considered whether:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged,
>
> (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue,
>
> (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and
>
> (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice, as required by Rule 403.

*United States v. Hicks*, 635 F.3d 1063, 1069 (7th Cir. 2011) (*citing United States v. Harris*, 587 F.3d 861, 864-65 (7th Cir. 2009). In *United States v. Gomez*, 763 F.3d 845

███████████████████████████████████

(7th Cir. 2014), the Seventh Circuit jettisoned the above four-part test—which some had come to treat as "an artificial checklist"—in favor of a "more straightforward rules-based approach." *Id.* at 853, 855. Still, the *Gomez* Court made sure to note that the four factors or steps of the old test touch on the principles of Rule 404. For instance, the Court noted that "[s]tep two of the test, which requires an inquiry into the similarity and timing of the other act, is loosely connected to the basic principles of relevance found in Rules 401 and 402." *Id.* at 854. Expanding on that, the *Gomez* Court "restate[d] the principle in positive terms" as "[t]he extent to which a proffered 'other crime, wrong, or act' is close in time and similar to the conduct at issue in the case *may* have a bearing on its relevance." *Id.* at 855.

### i. The alleged hotel reservations and travel arrangements made by Mr. Brown are irrelevant to the allegations in Count Six.

First, hotel reservations and travel arrangements for Minors 4 and 6 are irrelevant to the charge Mr. Brown is facing, and therefore, should be inadmissible. As it concerns Mr. Brown, this case involves only one count (Count Six) and only one minor (Minor 1). In that count, Mr. Brown is accused of receiving child pornography depicting one minor. Making travel arrangements and reserving hotel rooms on behalf of an employer are actions that are not at all similar to receiving child pornography. Additionally, those prior acts occurred years before the conduct alleged in Count Six. Simply put, Mr. Brown's knowledge of other victims' minority statuses (e.g., Minor 4 and Minor 6) is not relevant to whether Mr. Brown knew the minority of the individual depicted in the videotapes at issue in Count Six (i.e., Minor 1).

5

### ii. The other crimes, wrongs, or acts here are improper propensity evidence.

Second, because Mr. Brown is charged only in Count Six—which involves Minor 1's minority status alone—the prior bad acts evidence discussed here would, even if relevant, be improper propensity evidence under Rule 404(b)(1). The value of these statements to the government may be that since Mr. Brown allegedly aided Kelly's exploitation of other minors or knew that Kelly had relations with other minors, the jury might be more inclined to believe that Mr. Brown would have been more likely to have aided Kelly in obtaining the videotapes (depicting Minor 1) at issue in Count Six. Alternatively, these prior acts would presumably be offered to show an increased likelihood that Mr. Brown should have known that the tapes at issue in Count Six involved a minor. These 404(b)(2) purposes, however, are not enough. In *Gomez*, the Seventh Circuit clarified the problem of multiple prior bad act evidence purposes (i.e., cases where the evidence involves both improper propensity uses and ostensibly proper Rule 404(b)(2) uses) as follows:

> [W]e have cautioned that it's not enough for the proponent of the other-act evidence simply to point to a purpose in the "permitted" list and assert that the other-act evidence is relevant to it. Rule 404(b) is not just concerned with the ultimate conclusion, but also with the chain of reasoning that supports the non-propensity purpose for admitting the evidence. In other words, the rule allows the use of other-act evidence only when its admission is supported by some propensity-free chain of reasoning. This is not to say that other-act evidence must be excluded whenever a propensity inference can be drawn; rather, Rule 404(b) excludes the evidence if its relevance to "another purpose" is established *only* through the forbidden propensity inference.

*Id.* at 856. Identifying the underlying principle, the *Gomez* Court explained:

6

> The principle that emerges from these recent cases is that the district court should not just ask *whether* the proposed other-act evidence is relevant to a non-propensity purpose but *how* exactly the evidence is relevant to that purpose—or more specifically, how the evidence is relevant without relying on a propensity inference.

*Id.* at 856 (emphasis added by underlining, italics in original).

Looking at the chain of reasoning here, we see that both of the above hypothetical Rule 404(b)(2) uses suffer from and depend on propensity inferences. Indeed, the statements necessarily involve propensity inferences of the worst kind. First, they depend on an inference that, when allegedly working with Kelly to retrieve the tapes, Mr. Brown acted in accordance with his prior unrelated conduct. Further, they also depend on three additional, even more troubling inferences unrelated to Mr. Brown's own character: (1) that Kelly, when producing the tapes, acted in accordance with his prior conduct; (2) given Kelly's prior conduct, the person depicted on the tape was likely a minor as well; (3) that Kelly would have been more likely to ask Mr. Brown to retrieve the videotapes because Kelly had employed Mr. Brown to facilitate his prior unrelated conduct involving minors. Thus, the statements would violate the principle articulated in *Gomez*.

In sum, the government should be barred from eliciting such testimony. First, the other acts evidence constitutes inadmissible hearsay. Second, the other acts are too dissimilar and distant in time to be relevant to the allegations in Count Six. Third, the other acts evidence constitutes impermissible propensity evidence because the chain of reasoning necessarily includes propensity inferences.

7

**B. This Court should bar the government from eliciting testimony from Individuals D and B regarding Mr. Brown's role in arranging an abortion for one or more of Kelly's alleged partners.**

The government may seek to elicit testimony from Individual D regarding the role Mr. Brown may have played in her abortion. Specifically, the government may elicit testimony from Individual D that Kelly paid for the abortion and that Mr. Brown, acting as Kelly's assistant, made the abortion appointment, drove Individual D to the appointment, and posed as Individual D's uncle when they filled out the paperwork for the procedure. Additionally, the government may seek to elicit speculative testimony from Individual B that Mr. Brown and others arranged abortions for minors on Kelly's behalf and that Mr. Brown and others had asked him about abortion laws.

This Court should bar the government from introducing these prior acts. As with motion *in limine* no. 2(a), the prior acts here (i.e., Mr. Brown's alleged conduct in arranging abortions) are irrelevant. First, Individual D was either nineteen or twenty years old at the time and was therefore not a minor. Second, Individual D's minority status is not at issue in this case as it concerns Mr. Brown. Third, there is no indication that Minor 1 is one of the minors who were rumored to have received an abortion arranged by Mr. Brown. Fourth, these abortion allegations are not similar or close enough in time to be relevant to the allegations in Count Six.

Further, should this Court determine that the testimony is relevant, the Court should exclude it as unduly prejudicial under Federal Rule of Evidence 403. Under Rule 403, the Court may exclude relevant evidence if its probative value is

substantially outweighed by a danger of: unfair prejudice, confusing the jury, or wasting time. Fed. R. Evid. 403. "Evidence is unduly prejudicial if it creates a genuine risk that the emotions of the jury will be excited to irrational behavior, and the risk is disproportionate to the probative value of the offered evidence." United States v. Loughry, 660 F.3d 965, 974 (7th Cir. 2011). Testimony that Mr. Brown arranged abortions for minors is obviously likely to illicit a strong negative emotional response from jurors. Additionally, because those rumored and alleged abortions involved people other than Minor 1 and because the ages of those people (including minors and adults) varied significantly (between the ages of sixteen to twenty years old), there is substantial risk that the testimony would confuse jurors.

What little probative value the evidence may have is substantially outweighed by the risk of unduly prejudicing and confusing jurors. Accordingly, Mr. Brown moves to bar the government from eliciting such testimony.

### C. The Court should preclude the government from eliciting testimony from Individual B regarding Mr. Brown's role in inviting concert attendees backstage for Kelly.

The government may seek to elicit testimony from Individual B regarding the role Mr. Brown may have played in inviting minor concert attendees to meet Kelly. Specifically, the government may prompt Individual B to testify that Kelly would identify girls (ranging in age from sixteen to twenty years old) in the audience and instruct his employees, including Mr. Brown, to invite them backstage.

For the reasons discussed in motion no. 2(a), this Court should bar the government from eliciting testimony as to Mr. Brown's role in inviting concert

attendees backstage to meet Kelly. Once more, these prior acts are irrelevant to the charge in Count Six. There is no indication that Minor 1 was one of the attendees who Mr. Brown invited to meet Kelly in this way. Indeed, Minor 1 did not meet Kelly at a concert. Moreover, Mr. Brown played no role whatsoever in the introduction of Minor 1 to Kelly. Also, there is no indication that Mr. Brown witnessed Kelly engage in sexual activity with any of the attendees that he invited backstage. Again, this conduct is not similar enough to be relevant to the allegations in Count Six. Further, even if this Court finds that it is relevant, it should preclude testimony as to the acts under Rule 403. As with the abortion discussed above, the alleged conduct here would unduly prejudice and confuse the jurors.

**3.   This Court should bar the government from eliciting expert testimony from unqualified witnesses.**

The government may seek to have law enforcement witnesses provide opinion testimony about child pornography generally, including typical offender behavior. This testimony would be based on special knowledge and expertise outside that which the average layperson possesses, so it would be inadmissible as lay testimony under Fed. R. Evid. 701. *See, e.g., United States v. York*, 572 F.3d 415, 420 (7th Cir. 2009); *United States v. Wehrle*, 985 F.3d 549, 553 (7th Cir. 2021) ("Expert testimony generally involves technical concepts beyond ordinary understanding"). As such, before being permitted to elicit such testimony, the government should be required to qualify that witness as an expert. *See* Fed. R. Evid. 702.

If the government does not seek to qualify a witness as an expert, that witness should be limited to giving fact testimony and only those opinions or inferences that

are not based on specialized knowledge, such as that witness' participation in the investigation and statements made by others (if not precluded by the hearsay rules). *See* Fed. R. Evid. 701.

The government may seek to avoid the expert testimony requirements by characterizing these witnesses as "summary" witnesses or claiming they are merely summarizing evidence. But merely claiming that witnesses are "summary" witnesses does nothing to alter the application of Rules 701 and 702. Because such law enforcement witness testimony would be based on knowledge about child pornography—about which laypeople are uninformed—Rule 702 would be triggered. *See United States v. Wehrle*, 985 F.3d 549, 553 (7th Cir. 2021). The government should not be allowed to circumvent the rules for expert testimony and take away this Court's important gate-keeping role merely by characterizing these witnesses as "summary" witnesses, particularly where, as here, Mr. Brown is making this objection well in advance of the testimony.

### 4. This Court should preclude government witnesses from providing summaries or statements from interviewed witnesses for nontestifying individuals.

The Sixth Amendment provides a criminal defendant with the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. "[T]his bedrock procedural guarantee" protects against convictions based on out-of-court accusations that the defendant cannot test "in the crucible of cross-examination." *Crawford v. Washington*, 541 U.S. 36, 42, 61 (2004). To satisfy the Confrontation Clause, "testimonial statements of witnesses absent from trial" may be "admitted only where

the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Id*. at 59.

Despite the Confrontation Clause guarantee, there are some limited exceptions. As the Seventh Circuit noted:

> We have explained that such [out-of-court] statements are admissible as nonhearsay when offered to make a defendant's recorded statements intelligible for the jury (that is, for context), or when brief and essential to bridge gaps in the trial testimony that might significantly confuse or mislead jurors.

*United States v. Walker*, 673 F.3d 649, 657-58 (7th Cir. 2012) (cleaned up). Still, in that very decision, the Seventh Circuit immediately cautioned that "these limited nonhearsay uses do not open the door for law enforcement officers to narrate the course of their investigations, and thus spread before juries damning information that is not subject to cross-examination." *Id*. at 658. Having repeated that warning, the Seventh Circuit then offered the following criticism of the government's use of out-of-court statements:

> The government repeatedly hides behind its asserted needs to provide "context" and relate the "course of the investigation." These euphemistic descriptions cannot disguise a ploy to pin the two guns on [defendant] while avoiding the risk of putting [the nontestifying informant] on the stand.

*Id*. at 658. Thus, the Seventh Circuit has made clear that the exceptions to the Confrontation Clause must be limited if it is to not "eviscerate the constitutional right to confront and cross-examine one's accusers." *Id*. at 658 (quoting *United States v. Silva*, 380 F.3d 1018, 1020 (7th Cir. 2004).

Additionally, other circuits have taken a similarly strong stance. Consider, for example, the Fifth Circuit's recent warning against the use of out-of-court statements

against criminal defendants in *United States v. Hamann*, 33 F.4th 759 (5th Cir. 2022). In that case Officer Stanley offered testimony to explain how the Drug Enforcement Administration (DEA) became interested in Hamann. When testifying, he offered the testimonial hearsay of nontestifying witnesses: a confidential source, an unknown declarant, and a nontestifying officer. The confidential source, Stanley testified, told him that Hamann was "moving multiple ounces" of meth. *Id*. at 764. The unknown declarant, Stanley testified, told other law enforcement agencies that Hamann "was selling narcotics." *Id*. Then, "Stanley proceeded to recount the controlled purchase that justified the search warrant" and "veered off course again" when he described a controlled buy that was witnessed not by Stanley but by another officer who never testified. *Id*. at 764-65.

When evaluating Hamann's Confrontation Clause challenge, the Fifth Circuit outlined its inquiry as follows:

> We ask three questions to determine whether admitted evidence violated the Confrontation Clause: *First*, did the evidence introduce a testimonial statement by a nontestifying witness? *Second*, was any such statement offered to prove the truth of the matter asserted? *Third*, was the nontestifying witness available to testify, *or* was the defendant deprived of an opportunity to cross-examine him? If the answer to each of those questions is "yes," the Confrontation Clause was violated.

*Id*. at 767 (internal citations omitted). Applying that test, the Fifth Circuit found that the government had violated the Confrontation Clause because it was testimonial (the "primary purpose [was] to establish events . . . relevant to [] criminal prosecution"), offered for the truth of the matter asserted (the evidence "blatantly linked" the defendant to the crime"), and the nontestifying witnesses were not

13

unavailable and the defendant did not get a chance to cross-examine them. Turning to the decision's reasoning, the Fifth Circuit's discussion of the confidential source's statement is beneficial, but for our purposes the most relevant analysis is that of Stanley's testimony regarding the controlled buy. Accordingly, the following excerpt provides the Fifth Circuit's reasoning as to that testimony:

> It's true that if Stanley *had* provided only his own observations, there would be no Confrontation Clause problem. But Stanley was unequivocal: He "didn't personally have eyes on the hotel" where the controlled purchase happened. Instead, he listened by radio to another officer describing what was happening and debriefed the source after the sale. A man who listened to a Dodgers game on the radio and spoke to a friend who attended the game doesn't have personal knowledge of the game's winner; Vin Scully and the friend do. That man couldn't testify about the game without relying on the accuracy of third parties' observations, and neither could Stanley testify about the controlled purchase without doing the same.

*Id*. at 768. Lastly, the Fifth Circuit admonished the government for not heeding its warnings against "backdooring highly inculpatory hearsay via an explaining-the-investigation rationale" and failing to be "circumspect" and "limited" in its use of such out-of-court statements. *Id*. at 770, 763.

With this authority in mind, Mr. Brown asks this Court to exclude from trial any reference to the statements of other nontestifying individuals as violative of the Confrontation Clause. Additionally, under Rule 802, Mr. Brown asks this Court to exclude any hearsay statements not subject to Rule 801 exceptions.

**5.     This Court should preclude the government from making "Golden Rule" arguments with regard to the jury and the defendants.**

The government may ask the jury to put themselves in Mr. Brown's shoes and ask them to consider what they would have done if they were him. Any such

arguments—regardless of the evidentiary circumstances in which the government might make them—are impermissible because they are "Golden Rule" arguments. Commenting on that impropriety, the Seventh Circuit has noted that "A 'Golden Rule' appeal in which the jury is asked to put itself in the defendant's position 'is universally recognized as improper because it encourages the jury to depart from [] neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.'" *United States v. Roman*, 492 F.3d 803, 806 (7th Cir. 2007) (quoting *United States v. Teslim*, 869 F.2d 316, 328 (7th Cir. 1989)). Simply put, "[t]he government should not . . . [ask] the jurors to put themselves in defendant's position." *United States v. Teslim*, 869 F.2d 316, 328 (7th Cir. 1989).

## **CONCLUSION**

For the above stated reasons, Mr. Brown respectfully requests that this Court grant his motions *in limine*.

Mr. Brown also respectfully requests that this Court allow him to submit additional motions *in limine* in response to subsequent discovery productions, notice as to Rule 702 or 404 evidence, and the filing of witness and exhibit lists.

Respectfully submitted,

FEDERAL DEFENDER PROGRAM
John F. Murphy
Executive Director

By:    <u>/s/ Mary H. Judge</u>
       Mary H. Judge
       Attorney for Milton Brown

FEDERAL DEFENDER PROGRAM
55 E. Monroe Street, Suite 2800
Chicago, Illinois 60603
(312) 621-8300