IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 19 CR 567-3 |
| v. | ) | |
| | ) | Judge Harry D. Leinenweber |
| MILTON BROWN | ) | |
| | ) | |

**DEFENDANT MILTON BROWN'S RESPONSE TO
GOVERNMENT'S CONSOLIDATED MOTIONS *IN LIMINE***

Defendant, MILTON BROWN, by the Federal Defender Program and its attorney, MARY H. JUDGE, respectfully submits this consolidated response to the government's *Consolidated Motions in Limine* (Dkt. 211) and this reply to the government's *Response to Defendant Milton Brown and Robert Kelly's Consolidated Motions in Limine* (Dkt. 228).

1. **Government's motion for notice concerning Rule 608(b) impeachment should be denied. (Govt. Motion No. 8).**

In its consolidated motions *in limine*, the government requested prior notice of Rule 608(b) ("specific instances of conduct") impeachment evidence. Specifically, the government proposed a procedure by which, prior to each cross-examination, defense counsel would have to notify the Court and the government of the intent to impeach by specific instances. This request should be denied for five main reasons. First and most notably, the government cites no precedent for such a procedure. Moreover, counsel is unaware of any such precedent.

Second, the Federal Rules of Evidence do not contain any provision requiring, encouraging, or even discussing prior notice in this context, let alone the government's proposed procedure. Further, the omission of such a provision in Rule 608 is made more

conspicuous by the inclusion of comparable provisions in other rules. Consider, for example, Rule 404(b), which requires the government to provide advance notice in a criminal case where it intends to offer evidence of "other crimes, wrongs, or acts" at trial. Fed. R. Evid. R. 404(b)(3). Notably, the Rule 404(b)(3) requirement applies only to the prosecution, not the defense (as the government requests here).

Lastly, the motion should be denied for three additional reasons. To start, sidebars every time 608(b) evidence is anticipated on cross-examination would be tedious and disruptive to the defense. They would break the continuity and flow of the trial and needlessly distract the jurors by distancing cross-examination from the information presented during direct examination. Relatedly, the proposed procedure would, contrary to Rule 611's guidance, waste time, not save it. Finally, Rule 402 relevance judgments should be made during questioning and that approach is generally preferred. The government argues that its proposed procedure would reduce the risk of irrelevant questioning by addressing the matter prior to cross-examination, but this would put the cart before the horse because the information needed to make the relevance determination is itself often gathered during questioning. Thus, there is no reason to believe that the proposed procedure would be fairer or more streamlined than the usual standing objection approach.[1]

**2. Government's motion to preclude argument and evidence of selective prosecution theory should be denied in part. (Govt. Motion No. 9(D)).**

Mr. Brown has no intention of making arguments or introducing evidence of selective prosecution. Of course, such arguments would be improper. That said, the

---

[1] Additionally, in an effort to streamline the trial, Mr. Brown hereby seeks permission to ask questions (e.g., conduct direct examination) of government witnesses after cross-examination is complete. In other words, Mr. Brown asks to occasionally conduct direct examination in the government's case in chief—instead of later recalling the witnesses—where questioning would be short.

2

government's motion is impermissibly broad insofar as it would, if granted in whole, preclude admissible evidence. Specifically, Mr. Brown takes issue with the government's request that "defendants should be precluded from making legally irrelevant and prejudicial arguments regarding the parents of Minors 1, 3, 4, 5, and 6." Dkt. 228 at 33. In elaborating on that request, the government explained that it hoped to preclude the defendants from "deflect[ing] blame for their criminal conduct." Dkt. 228 at 33.

Evidence and arguments regarding the parents of Minor 1 are relevant for other, proper purposes. Consider, for example, the role of Minor 1's parents in her continuing contact with Kelly. Evidence of their knowing participation in and encouragement of that relationship would, for instance, go to Mr. Brown's belief that either (1) Minor 1's relationship with Kelly was not sexual or (2) Minor 1 was old enough to participate in a sexual relationship with Kelly. The use of such evidence in this way would not raise the issue of selective prosecution. Thus, Mr. Brown asks that the Court grant the government's motion in part and deny it to the extent that it would preclude otherwise admissible evidence of the minors' parents' conduct.

3. **Government's motion to preclude argument or evidence of non-pertinent traits of defendant's characters (Govt. Motion No. 12) and argument that Mr. Brown may offer only limited reputation evidence under Rule 405(a).**

In Mr. Brown's consolidated motions *in limine* (Dkt. 213) counsel argued that the court should permit Mr. Brown to introduce evidence of his law-abiding character by reputation, opinion, and specific acts. In its consolidated motions *in limine* and its response, the government makes two contentions with regard to that request. First, the government moves to preclude argument or evidence of non-pertinent character traits. Dkt. 211 at 35. Second, the government contends that Mr. Brown "may offer limited

3

reputation evidence [for being a law-abiding citizen] under Rule 405(a)." Dkt. 228 at 16. As for specific instances of that character, however, the government argues that Mr. Brown may not introduce such evidence. Dkt. 228 at 16.

Starting with Government Motion No. 12, Mr. Brown agrees so long as evidence of his law-abiding character is permitted as a pertinent trait. In Section VII of its response, the government concedes that reputation or opinion evidence of such a character trait would be permitted at least under Rule 405(a). Dkt. 228 at 16. The only disagreement here is to whether Mr. Brown may also prove that character trait by means of specific instances under Rule 405(b) which provides that where a defendant's character is "an essential element of a charge, claim, or defense, the character or trait may also be proven by relevant specific instances of the person's conduct." Fed. R. Evid. 404(b).

Turning now to the government's argument that Mr. Brown may not admit evidence of specific instances of his law-abiding character, Mr. Brown asks the Court to grant his motion (No. 1) in whole. The government contends that Mr. Brown "*may not . . . introduce specific instances of Brown following the law on other occasions as character evidence.*" Dkt. 228 at 16. In support of that argument, the government cites two cases: *United States v. Reese*, 666 F.3d 1007 (7th Cir. 2012) and *United States v. Heidecke*, 900 F.2d 1155 (7th Cir. 1990). Both of these cases, however, are inapposite and inapplicable.

In *Reese*, the defendant sought to "elicit evidence of his failure to engage in unlawful conduct during his cross-examination of [a co-conspirator who cooperated and testified for the government.]" *Reese*, 666 F.3d at 1020. There, the issues presented by the exclusion were hearsay, Rule 106 recordings, and the Confrontation Clause; not once in this part of the decision (i.e., "B. The District Court Did Not Abuse Its Discretion by Excluding Recorded Conversations Between Reese and Rosmansanta") did the Court

4

discuss character evidence generally or Rule 405 specifically. In *Heidecke*, the defendant sought to discover evidence that he never engaged in previous misconduct while working for the Illinois Secretary of State to support his entrapment defense. The *Heidecke* quote provided by the government comes from an irrelevant passage in which the Seventh Circuit affirms the district court's refusal to compel discovery of records from the federal and state investigation into the matter. Moreover, when distinguishing *United States v. Sternstein*, 596 F.2d 528 (2d Cir. 1979) (holding that defendant was entitled to discovery of records reflecting hundreds of properly filed tax returns in tax fraud case), the *Heidecke* Court even implied that there are indeed cases where such evidence is discoverable and admissible. *Heidecke*, 900 F.2d at 1163, n.5. Since this motion does not involve discovery obligations, hearsay, Rule 106, or the Confrontation Clause, *Reese* and *Heidecke* are inapposite and inapplicable.

4. **Mr. Brown's motion to preclude evidence that Mr. Brown made travel arrangements for Minors 4 and 6 should be granted. (Motion No. 2(A)).**

In his consolidated motions *in limine* (Dkt. 213), Mr. Brown moved to bar the government from eliciting testimony from Minors 4 and 6 regarding the times Mr. Brown made hotel reservations and travel arrangements for them as inadmissible Rule 404(b) evidence. Presumably conceding that the proffered evidence is inadmissible propensity evidence, the government instead argues that such evidence would "constitute direct evidence of the charged offense[]." Dkt. 228 at 1. The government misstated and misapplied the law on this matter. This evidence is absolutely not direct evidence of the charged offense—knowingly receiving child pornography, namely a recording allegedly

5

portraying Minor 1 engaging in sexual acts on Videos 2, 3 and 4—and instead is evidence of other bad acts.[2]

As discussed in his motion (Dkt. 213 at 5), this testimony would be irrelevant to Count Six. Most importantly, the testimony involve minors other than Minor 1, the only minor alleged to have been depicted in Videos 2, 3, and 4. Additionally, the travel and hotel arrangements were made years before the conduct at issue in Count Six.

Notably, the government hints in its response that the testimony may be relevant to the allegations against Mr. Brown in Count Six because Count Six partly incorporates Count Five, which briefly mentions (but does not otherwise substantially involve) Minors 4 and 6. Dkt. 228 at 2-3. Specifically, because Mr. Brown is supposedly "included in the 'and others' language of the conspiracy counts," the government argues that the hotel and travel arrangements provided for Minors 4 and 6 are admissible. Although not spelled out in the government's response, the argument would depend on the contention that the government can prove what is alleged in the indictment. In this way, the government offers another attempt at admitting this testimony against Mr. Brown as standard, direct evidence as opposed to Rule 404(b) evidence by casting a lifeline out to Count Five.

The attempt to use Count Five to get this evidence in against Mr. Brown should be rejected for two reasons. First, with respect to Mr. Brown, the travel arrangements are

---

[2] When considering whether this is Rule 404(b) evidence, an example may help. Let's say Kelly liked to murder people and hide their bodies in Sherwood Forest. Suppose the prosecution could show that Mr. Brown drove Victims One and Two to meet Kelly at Sherwood Forrest and that they both were later found dead. Now, on trial for the murder of Victim Three, also found in Sherwood Forest, the government wants to introduce the murders of Victims One and Two, to show Mr. Brown's knowledge that since he also drove Victim Three to meet Kelly at Sherwood Forest, he knew or should have known that Kelly was going to murder Victim Three. According to the government, that would help establish that Mr. Brown is an accessory to the murder of Victim Three. While the two prior murders may have impacted what Mr. Brown knew or should have known would happen, they are still clearly other bad acts. The same is true for any evidence that Mr. Brown knew or should have known that Kelly had sex with minors other than Minor 1. Further, the above Sherwood Forrest example involves acts more similar to the charged offense and requires fewer propensity inferences.

irrelevant to Count Five. That count mentions Mr. Brown, Minor 4, and Minor 6 only three times in total: (1) in Part 1(c) it mentions that Kelly employed Mr. Brown from 1997 to 2019 (Dkt. 93 at 5); (2) in Parts 1(f) and 1(h) it mentions that Minor 4 met Kelly in 1999 when she was sixteen years old and Minor 6 met Kelly in 1997 or 1998 when she was thirteen or fourteen years old (Dkt. 93 at 6); (3) in Parts 1(j) and 1(k) it mentions that Kelly engaged in sexual acts with Minors 4 and 6 and that Kelly recorded himself engaging in those acts with Minor 4 among others not including Minor 6 (Dkt. 93 at 6). Nowhere else does Count Five mention Mr. Brown directly or Minors 4 or 6 directly or indirectly. Indeed, in terms of the alleged conduct underlying the charged offense of conspiracy in that count, Minors 4 and 6 are not discussed at all—none of the overt acts have anything to do with either minor. Second and more importantly, the incorporated language from Count Five is surplusage to Count Six with respect to Mr. Brown. That is, nothing in that incorporated language is necessary to determine Mr. Brown's guilt or innocence as to Count Six. The incorporated language, especially Parts 1(f), (h), (j), and (k), is of no consequence to Count Six's allegation that Mr. Brown helped Kelly retrieve the videos of Minor 1. As surplusage, evidence that the government argues supports the Count Five language (but which as discussed above is indeed irrelevant to even that count) is irrelevant to Count Six. Thus, the government's attempt to pad their argument by reference to Count Five is unavailing and should be rejected.

Again, it is worth noting that beyond the relevance issues discussed above, if considered Rule 404(b) evidence, the testimony still constitutes improper propensity evidence if offered against Mr. Brown. That argument is provided in Section 2, Part A, subsection ii of the motion. Dkt. 213 at 6-7. In short, Mr. Brown outlined possible chains of reasoning that the government might offer and noted that Rule 404(b) requires the

7

proponent to show "how the evidence is relevant without relying on a propensity inference." Dkt. 213 at 7.

Importantly, the government does not cite any caselaw to challenge Mr. Brown's framing of the *Gomez* analysis, and it does not contend that it is not relying on a propensity inference. Indeed, the government goes so far as to offer one of the very propensity-dependent chains of reasoning that Mr. Brown cautioned against in his motion. *See* Dkt. 213 at 6-7. Specifically, the government makes the following argument:

> [Premise 1:] Brown's knowledge that [Minor 1 is] depicted in Videos 2, 3, and 4 is essential and relevant to Count Six.
>
> ---
>
> [Conclusion:] Accordingly, Brown's knowledge of Kelly's involvement with minors . . . is probative of Brown's knowledge of what was depicted on Videos 2, 3, and 4.

Dkt. 228 at 3-4. Summed up, the government wants the jury to believe that since Mr. Brown allegedly helped Kelly have sex with Minors 4 and 6, Mr. Brown should have also known that a minor was likely depicted on the videos at issue in Count Six.

Obviously, that argument relies on an unstated premise. In order for the conclusion to logically follow, that missing premise must be some form of the following: "because Mr. Brown helped Kelly engage in sexual activity with Minors 4 and 6, it is more likely that Mr. Brown knew or should have known that the relevant tapes as charged in Count Six depicted a minor (i.e., Minor 1)." Nothing else would connect Mr. Brown's actions in making hotel and travel arrangements with the knowledge that the specific tapes at issue in Count Six depicted minors. Not only would that constitute a propensity inference (and thereby violate Rule 404(b)), it would also constitute a compounded propensity inference whereby Mr. Brown's propensity to assist Kelly is layered on top of Kelly's propensity to engage in sexual activity with minors. *See* Dkt. 213 at 7 (outlining

8

four of the propensity inferences relied on by the government). Thus, the government has not, and cannot, identify a propensity-free chain of reasoning to satisfy Rule 404(b).

As for the government's request to admit this evidence against Mr. Brown's co-defendants, Mr. Brown offers two possible responses. One, should the Court allow this testimony against co-defendants Kelly or McDavid (or both) as direct evidence of Counts One-Five and Seven-Thirteen, Mr. Brown would need to be severed. Alternatively, Mr. Brown asks that if this testimony is allowed, the witnesses refer to him by either a pseudonym or as an unnamed, unidentified employee of Kelly's. This would allow the government to use the testimony to prove the allegations against his co-defendants while avoiding improper uses against Mr. Brown.

Lastly, should the Court decide that Rule 404(b) does not preclude this evidence, Mr. Brown asks that the Court preclude the evidence under either Rule 402 or Rule 403. First, the testimony would not be relevant to the charges against Mr. Brown. As defined in Rule 401, evidence is "relevant" if (a) "it has any tendency to make a fact more or less probable than it would be without the evidence" and (b) "the fact is of consequence in determining the action." Fed. R. Evid. 401. Here, the evidence would not satisfy that definition. Most notably, the testimony would not make more or less probable any fact of consequence to the allegations in Count Six. That count does not even remotely involve Minors 4 or 6. Instead, it involves conduct from August 2001 to April 2007 by Mr. Brown, Kelly, McDavid, Individual A, Individual B, and unnamed others to retrieve tapes depicting Kelly and Minor 1. Notably, the testimony by Minors 4 and 6 refer to actions taken long before that time frame. Second, if the testimony has any probative value, it is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. Fed. R. Evid. 403. This is a complex case with more than a dozen

9

counts, some of which directly involve Minors 4 and 6. Allowing the government to elicit this testimony would risk confusing the issues as to the counts and misleading the jury as to the potential scope of Mr. Brown's criminal liability. Additionally, this testimony would create a risk of unfair prejudice as Mr. Brown could be held accountable for actions unrelated to the alleged conduct for which he is charged.[3]

## CONCLUSION

For the above reasons, Mr. Brown asks that the Court grant his motions *in limine* and deny in whole or in part government motions *in limine* 8, 9(D), and 12.

Respectfully submitted,

FEDERAL DEFENDER PROGRAM
John F. Murphy
Executive Director

By: /s/ Mary H. Judge
Mary H. Judge
Attorney for Milton Brown

FEDERAL DEFENDER PROGRAM
55 E. Monroe Street, Suite 2800
Chicago, Illinois 60603
(312) 621-8300

---

[3] This case has garnered much attention and it involves appalling, abhorrent, and startling allegations. As it stands, those allegations alone are enough to elicit juror outrage. That is important to note because many of those allegations have nothing to do with Mr. Brown. Indeed, Mr. Brown is charged in only one of the thirteen counts in this case. Delineating the line between Mr. Brown's liability and that of Kelly and McDavid's is crucial to securing a fair trial in this case. Accordingly, allowing the government to blur or erase that line by introducing this testimony against Mr. Brown would risk subjecting Mr. Brown to an avalanche of unfair prejudice—including guilt by association, emotional outrage and anger, and unchecked retributivism. Suddenly, Mr. Brown would be on trial not just for his alleged actions concerning the retrieval of the tapes at issue in Count Six, but also for his employment by and association with Kelly more broadly.

## CERTIFICATE OF SERVICE

      The undersigned, <u>Mary H. Judge</u>, an attorney with the Federal Defender Program hereby certifies that in accordance with FED.R.CRIM. P. 49, FED. R. CIV. P5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document(s):

**<u>DEFENDANT MILTON BROWN'S RESPONSE TO GOVERNMENT'S CONSOLIDATED MOTIONS *IN LIMINE*</u>**

was served pursuant to the district court's ECF system as to ECF filings, if any, and were sent by first-class mail/hand delivery on <u>July 8, 2022</u>, to counsel/parties that are non-ECF filers.

      By:    */s/ Mary H. Judge*
                    MARY H. JUDGE
                    FEDERAL DEFENDER PROGRAM
                    55 E. Monroe St., Suite 2800
                    Chicago, Illinois 60603
                    (312) 621-8336